**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

POWERS DISTRIBUTING COMPANY,
INC.

                        Plaintiff,

                                  Case No. 16-12740
           v.                   Hon. Terrence G. Berg

GRENZEBACH CORPORATION,

                        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION TO DISMISS (DKT. 3)**

## I. INTRODUCTION

Defendant Grenzebach Corporation moves to dismiss this case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the parties' dispute must be arbitrated. The Court finds that Plaintiff's claims relate to contracts with arbitration provisions. But because Plaintiff asked at oral argument for permission to amend its complaint, Defendant's motion is **DENIED WITHOUT PREJUDICE**.

## II. FACTUAL AND PROCEDURAL HISTORY

This is a breach of contract case. Plaintiff is a beer distributor. Dkt. 5, Pg. ID 132. Defendant is a company that provides automated systems for businesses. *Id.* In September of 2013, Plaintiff purchased an automated system for locating and retrieving products in a distribution center (a "case-picking system") from Material Handling Technologies (MHT). *Id.* at Pg. ID 133. The contract for the purchase of this

system did not contain an arbitration provision. *Id.* at Pg. ID 135. Six months later, MHT informed Plaintiff that Defendant had acquired MHT's entire case-picking line of business and that Plaintiff should send future payments for the system to Defendant, not MHT. *Id.* In June of 2014, Defendant offered Plaintiff an update to the system that would give the system new capabilities. *Id.* at Pg. IDs 135-36. Defendant's offer was eventually memorialized in two purchase orders, one for a software upgrade and one for a hardware upgrade. Dkt. 5, Exs. C and D. Both purchase orders contained the following arbitration provision:

Arbitration Except as specifically provided herein, any dispute, controversy or claim arising out of or in relation to or in connection with this agreement, or in the operations carried out under this agreement, including without limitation any dispute as to the construction, validity, interpretation, enforceability or breach of this agreement, shall be exclusively and finally settled by arbitration, and any party or party affiliate may submit such a dispute, controversy or claim to arbitration. Unless otherwise expressly provided in this agreement or agreed in writing by the parties or party affiliate to the arbitration proceeding, the arbitration proceedings shall be held in Atlanta, Georgia, in accordance with the Commercial Arbitration Rules of the American Arbitration Association (*ARAAA*), as amended from time to time. However, any Arbitration Award (as defined by **ARAAA**) may be entered in any court having jurisdiction over the party, or party affiliate against which enforcement is sought. Each party shall pay its own attorneys' fees and costs. Other costs of arbitration, such as arbitrator(s)' fee, shall be borne equally by the parties. Consequential, punitive, or other similar damages shall not be allowed.

The arbitration proceedings shall be conducted in the English language and the arbitrator(s) shall be fluent in the English language. Where the parties are of more than one nationality, the single arbitrator or the presiding arbitrator, as the case may be, shall not be of the same nationality as any of the parties or their ultimate parent entities.

*Id.*; *see also* Dkt. 3, Exs. 1 and 2. Plaintiff accepted Defendant's offer. Dkt. 3, Ex. 4.

Installation of the upgrades took six months. Dkt. 5, Pg. ID 137. When the installation was finally complete, Plaintiff tested the upgrades. *Id.* The results were subpar. *Id.* The system passed only half of the tests, and much of it had to be reverted

2

to the original version because of system failures. *Id.* Plaintiff only approved the system for the tests that it passed, but deemed the upgrade unworkable in its entirety. *Id.* Plaintiff and Defendant then agreed that Plaintiff would have the option to purchase the next upgrade for $25,000, and that, if Plaintiff chose to purchase the upgrade, Defendant would install the upgrade no later than December of 2016. *Id.*

That upgrade never came. In November of 2015, Defendant fired the only technician who could support the system. Dkt. 5, Pg. ID 137. Two months later, Defendant informed Plaintiff that instead of providing the promised upgrade to the existing system, Defendant planned to rewrite the entire system. *Id.* at Pg. ID 138. The parties exchanged emails discussing how the rewrite would affect the agreement the parties reached after the first upgrade failed testing. *Id.* at Pg. IDs 138-40. Defendant then emailed Plaintiff with the news that Defendant had decided not to rewrite the system after all, and that it was cutting support for the original system from 24-hours-a-day to weekdays from 8:00 a.m. to 5:00 p.m. *Id.* at Pg. ID 140.

At that point Plaintiff still had the original system it purchased from MHT, but needed to support the system itself because Defendant no longer employed anyone who could provide support. Dkt. 5, Pg. ID 140. On June 16, 2016, Plaintiff sued Defendant in Oakland County Circuit Court, alleging Breach of Contract, Breach of Express and Implied Warranties, Innocent Misrepresentation, Negligent Misrepresentation, Silent Fraud, and Indemnification. Dkt. 1. Defendant removed the case to this Court, *id.*, and now seeks dismissal based on the arbitration clauses in the purchase orders. Dkt. 3.

## III. ANALYSIS

### A. Standard of Review

Courts in the Sixth Circuit are split on whether a motion to dismiss based on an arbitration agreement should be brought under Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) or Rule 12(b)(6) (failure to state a claim). Some courts have found that such motions should be raised under Rule 12(b)(1).[1] Others have concluded that they arise under Rule 12(b)(6).[2]

Whether to proceed under one rule or the other turns on concerns about, on one hand, whether evidence outside the pleadings is being used and whether the case should be dismissed with prejudice under Rule 12(b)(6), and, on the other, whether the term "jurisdiction" (as in "lack of subject matter jurisdiction") is being used with precision under Rule 12(b)(1). When analyzing a factual attack to subject matter jurisdiction under Rule 12(b)(1), a court may consider any evidence properly before it. *See Morrison v. Circuit City Stores, Inc.*, 70 F. Supp. 2d 815, 819 (S.D. Ohio 1999).

---

[1] *See Mann v. Equifax Info. Servs., LLC*, 2013 WL 3814257, at *2 (E.D. Mich. 2013) (applying a Rule 12(b)(1) analysis to a motion seeking dismissal and an order compelling arbitration); *Multiband Corp. v. Block*, 2012 WL 1843261, at *5 (E.D. Mich., May 21, 2012) (explaining that, substantively, a motion to compel arbitration is a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction); *Dalton v. Jefferson Smurfit Corp.*, 979 F. Supp. 1187, 1192 (S.D. Ohio 1997) ("a motion to dismiss premised upon the argument that a plaintiff's claim must be submitted to arbitration is properly analyzed under Rule 12(b)(1)")

[2] *See High v. Capital Senior Living Props. 2—e Heatherwood, Inc.*, 594 F. Supp. 2d 789, 795 (E.D. Mich. 2008) (noting that "a motion to dismiss grounded on an arbitration clause is more properly brought under Rule 12(b)(6)"); *Moore v. Ferrellgas*, 533 F. Supp. 2d 740, 744 (W.D. Mich. 2008) (noting that the motion "would more properly have been brought under Rule 12(b)(6)").

4

The typical result of a Rule 12(b)(1) dismissal is that no obstacle prevents a plaintiff from litigating her claims in a different forum. *See Dalton*, 979 F. Supp. at 1192. A court dismissing a case because of an arbitration agreement "does not prevent a plaintiff from litigating the merits of his or her claim . . . [but] merely transfers the forum in which the litigation on the merits will occur." *Id.* These aspects of how Rule 12(b)(1) functions in the arbitration context suggest that a motion to dismiss based on an arbitration agreement falls within Rule 12(b)(1) rather than within Rule 12(b)(6).

But under the Federal Arbitration Act, a court retains authority to stay a case pending arbitration and then afterward enter judgment on the award. *See* 9 U.S.C. §§ 3, 9. So, technically, when a court compels arbitration it still retains jurisdiction over the dispute. And the Sixth Circuit has cautioned courts to be more precise when analyzing challenges phrased as attacks on "jurisdiction." *See Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 518-19 (6th Cir. 2006). This aspect of how Rule 12(b)(1) functions in the arbitration context—dismissing a case for "lack of subject matter jurisdiction" when the court in fact has and retains jurisdiction—suggests that a motion to dismiss based on an arbitration agreement falls within Rule 12(b)(6) rather than within Rule 12(b)(1).

Here, Defendant brings its motion under Rule 12(b)(1). Dkt. 3. Plaintiff does not argue that the Court should analyze the motion under Rule 12(b)(6), and instead responds within the confines of Rule 12(b)(1). Dkt. 5, Pg. IDs 141-150. Because the choice of Rules does not affect the outcome of the Court's analysis, and because the

parties address the question similarly, the Court will treat the motion as one to dismiss under Rule 12(b)(1).

A Rule 12(b)(1) motion attacks a complaint either facially or factually. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of the complaint itself, which requires a court to take as true all material allegations in the complaint and to construe those allegations in the light most favorable to the plaintiff. *Id.* at 598. A factual attack, however, challenges the factual existence of subject matter jurisdiction. A court analyzing a factual attack therefore need not accept as true the complaint's factual allegations, but instead must weigh any evidence properly before it. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 918 (6th Cir. 1986). Defendant argues that arbitration is the appropriate forum in which to settle this dispute. The complaint itself stands for Plaintiff's allegation that a court of law is the appropriate forum in which to settle this dispute. Thus Defendant's motion here is a factual attack questioning the factual existence of subject matter jurisdiction.

### B. Discussion

"A written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting 9 U.S.C. § 2). The Federal Arbitration Act "is at bottom a policy guaranteeing the enforcement of private

contractual agreements" arising from a "liberal federal policy favoring arbitration agreements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)). Accordingly, "when asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). When making this determination, there are two important considerations: the language in the arbitration agreement and the claims of the lawsuit. Here, both parties focus too much on the former and not enough on the latter.

Defendant argues that the language "any dispute, controversy or claim arising out of or in relation to or in connection with this agreement" mandates that *any* dispute between the parties must go to arbitration. Dkt. 3, Pg. ID 55. Plaintiff responds that the arbitration provisions in the purchase orders were not intended to and should not retroactively apply to the agreement between it and MHT. Dkt. 5, Pg. IDs 141-46. Both parties agree that the Court must examine "which agreement determines the scope of the contested obligations." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007). Defendant touts the upgrade agreements (with the arbitration clauses) and Plaintiff trumpets its agreement with MHT (without such clauses), but neither party connects those agreements to the specific obligations at issue in each cause of action.

Plaintiff has asserted six causes of action:

- Breach of Contract;

- Breach of Express and Implied Warranties;

- Innocent Misrepresentation;

- Negligent Misrepresentation;

- Silent Fraud; and

- Indemnification.

Dkt. 1. In analyzing what obligations each claim triggers and from which agreement those obligations stem, it is helpful to "ask if [the] action could be maintained without reference to the contract or relationship at issue." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). As noted by the *Nestle* court, this is a broader test than the test applicable when there are multiple contracts, 505 F.3d 498, 504, but the Court finds the test helpful in reaching an answer under the narrower test that asks which agreement determines the scope of the contested obligations. Thus the Court will proceed seriatim through each cause of action and will inquire whether it can be maintained without reference to the upgrade agreements (the agreements with the arbitration provisions). If the answer is yes, that cause of action will not be subject to arbitration. If the answer is no, that cause of action must go to arbitration.

1. *Breach of Contract*

The relevant language in the Complaint is:

> 55.   Powers incorporates by reference the preceding allegations as if fully set forth herein.
>
> 56.   The case picking system and upgrades, together with the purchase orders, terms and conditions and incorporated documentation, comprise a contract between Grenzebach and Powers.
>
> 57.   Powers fully performed under the contract.
>
> 58.   Grenzebach's failure to supply Powers with a case picking system and upgrades that conformed to the contract constitute material breaches of the contract.

Dkt. 1, Pg. ID 23. This cause of action cannot be maintained without reference to the upgrade agreements. In defining the contract Plaintiff claims Defendant breached, Plaintiff relies explicitly on the purchase orders. Plaintiff does not treat the contract between it and MHT as a separate contract, the obligations of which Defendant assumed and breached. In fact, the allegations in this cause of action and the allegations in the paragraphs Plaintiff incorporates by reference both focus entirely on the case-picking system's shortcomings *after* Defendant installed the upgrades. Plaintiff nowhere alleges that the original system malfunctioned, and nowhere alleges that Defendant's conduct breached specific provisions of the contract between MHT and Plaintiff. Thus the upgrade agreements determine the scope of the obligations contested by this cause of action, and this cause of action must go to arbitration.

2. *Breach of Express and Implied Warranties*

The relevant language is:

> 61.   Grenzebach expressly warranted that the case picking system and upgrades would conform to Grenzebach's affirmations and would comply with Powers' specifications.
>
> 64.   The case picking system and upgrades supplied by Grenzebach did not conform to Powers' affirmations that the case picking system and upgrades would meet Grenzebach's specifications.
>
> 67.   Grenzebach's failure to supply case picking system and upgrades that conformed to Powers' specifications constitutes breaches of Grenzebach's express warranties regarding the case picking system and upgrades.
>
> 68.   In addition, Grenzebach's failure to supply case picking system and upgrades that were merchantable within the meaning of the Uniform Commercial Code, and that were fit for their particular purpose, constitutes breaches of implied warranties.

Dkt. 1, Pg. IDs 24-25. This cause of action cannot be maintained without reference to the upgrade agreements. Plaintiff alleges only that Defendant expressly warranted both the case-picking system and its upgrades. Plaintiff does not allege that MHT warranted the original system and that Defendant assumed responsibility for that warranty. And Plaintiff mentions only the system and upgrades supplied by Defendant, not the original system supplied by MHT. Here, again, the upgrade agreements determine the scope of the obligations contested by this cause of action, and this cause of action must go to arbitration.

3.  *Innocent Misrepresentation*

The relevant language is:

> 71.  As described above, Grenzebach made numerous representations to Powers, including, without limitation, that particular types of equipment and software would best suit Powers' present operations and its projected expansion.
>
> 72.  As described above, Grenzebach made numerous representations to Powers, including, without limitation, that Powers' operations would be made compatible with the system being purchased by Powers.
>
> 73.  As described above, Grenzebach made numerous representations to Powers, including, without limitation, that the equipment would be supported.
>
> 74.  As described above, Grenzebach made numerous representations to Powers, including, without limitation, that the system and software upgrades would be completed.
>
> 75.  When making these representations, Grenzebach did so based on its apparent familiarity with both the equipment's capabilities and Powers' present needs.
>
> 76.  When making these representations, Grenzebach drew upon its particularized knowledge of the these systems and software.
>
> 77.  In reliance on Grenzebach's representations, Powers was led to believe that Powers' systems, operations and capabilities would be improved.
>
> 78.  Grenzebach made the foregoing material misrepresentations of existing fact to Powers in connection with the parties' entry into their agreements described herein.
>
> 79.  Grenzebach knew these representations were false when made, or they were made recklessly and without knowledge of their truth and as a positive assertion.

Dkt. 1, Pg. ID 26.

This cause of action also cannot be maintained without reference to the upgrade agreements. Plaintiff references only representations made by Defendant, not representations made by MHT that Defendant then assumed. Further, Plaintiff

11

references the parties' agreements (the upgrade agreements), but nowhere references its agreement with MHT. The scope of the obligations contested by this cause of action are defined by the upgrade agreements, and those agreements contain arbitration clauses.

### 4. *Negligent Misrepresentation*

The relevant language is:

> 83.    As described above, Grenzebach made numerous representations to Powers, including, without limitation, that particular types of equipment and software would best suit Powers' present operations and its projected expansion.
>
> 84.    As described above, Grenzebach made numerous representations to Powers, including, without limitation, that Powers' operations would be made compatible with the system being purchased by Powers.
>
> 85.    As described above, Grenzebach made numerous representations to Powers, including, without limitation, that the equipment would be supported.
>
> 86.    As described above, Grenzebach made numerous representations to Powers, including, without limitation, that the system and software upgrades would be completed.
>
> 87.    When making these representations, Grenzebach did so based on its apparent familiarity with both the equipment's capabilities and Powers' present needs.
>
> 88.    When making these representations, Grenzebach drew upon its particularized knowledge of the these systems and software.
>
> 89.    In reliance on Grenzebach's representations, Powers was led to believe that Powers' systems, operations and capabilities would be improved.
>
> 90.    Grenzebach owed Powers a professional and business duty of care to provide Powers Plaintiffs with accurate information.

Dkt. 1, Pg. ID 27-28.

This cause of action, like the others, cannot be maintained without reference to the upgrade agreements. Again, Plaintiff references only representations made by

Defendant, not representations made by MHT that Defendant then assumed. Plaintiff alleges that Defendant relied upon *its own* particularized knowledge, and that it led Plaintiff to believe that the system would be *improved*. This demonstrates that the cause of action stems from allegations regarding the upgrades Defendant provided, not the initial system MHT provided. This cause of action is subject to arbitration because the obligations contested by this action arise under the upgrade agreements.

  5. *Silent Fraud*

The relevant language is:

> 98. Grenzebach failed to disclose, among other things, that there was incompatibility among the various systems, equipment and software that Powers purchased from Grenzebach.

> 99. Grenzebach failed to disclose, among other things, that there would not be support provided for the various systems, equipment and software that Powers purchased.

> 100. Grenzebach failed to disclose, among other things, that there would not be upgrades to the software that Powers purchased.

Dkt. 1, Pg. ID. 29.

The incompatibility of which Plaintiff complains exists between the systems, equipment, and software that Plaintiff purchased from Defendant, not from MHT. And the disclosures Plaintiff alleges that Defendant failed to make relate to upgrades and support. Nowhere does Plaintiff allege that Defendant breached a duty to disclose that belonged originally to MHT and was transferred to Defendant. Thus the upgrade

13

agreements determine the scope of the obligations contested by this cause of action, and this cause of action must go to arbitration.

      6.  *Indemnification*

The relevant language is:

> 104.  Under the terms of the parties' contract, Grenzebach expressly agreed to indemnify Powers against costs and expenses incurred as a result of Grenzebach's failure to comply with the Contract.

Dkt. 1, Pg. ID. 30.

This cause of action, by referring to "the contract" between Defendant and Plaintiff, also refers to the upgrade agreements. Plaintiff alleges only that Defendant expressly agreed to indemnify Plaintiff, not that MHT agreed to indemnify Plaintiff and Defendant assumed that obligation. Thus the upgrade agreements determine the scope of the obligations contested by this cause of action, and this cause of action must go to arbitration.

It is true that the only agreement containing an indemnification provision is the original agreement between MHT and Plaintiff, not either upgrade agreement between Defendant and Plaintiff. This suggests that Plaintiff is conflating MHT's obligations under its original contract with Defendant's obligations under the upgrade agreements. As it stands, the Complaint alleges that *Defendant* expressly agreed to indemnify Plaintiff; this is not correct, the obligation to indemnify applied to MHT under the original contract. But the Court will not construe Plaintiff's claim that *Defendant* agreed to indemnify Plaintiff to mean that *MHT* agreed to indemnify

Plaintiff. If Plaintiff meant to say that MHT agreed to indemnify Plaintiff, it should have said so. Likewise for the other causes of action—if Plaintiff meant to allege that an obligation at issue in one of its causes of action began as MHT's obligation and transferred to Defendant, Plaintiff should have said so.

## IV. CONCLUSION

The claims as drafted are subject to arbitration. But because at oral argument Plaintiff asked to amend its complaint, Defendant's Motion to Dismiss is **DENIED WITHOUT PREJUDICE**. The Court does not consider the amended complaint filed on October 18, 2016 as the amendment Plaintiff requested; there Plaintiff submitted exhibits and citations that previously were redacted, and did not change the substance of its allegations. Plaintiff may file an Amended Complaint within 14 days of the date of this Order, and Defendant may move to dismiss within 14 days of Plaintiff's filing. Plaintiff may then respond to any motion and Defendant may reply, as allowed under the Rules. If Plaintiff does not file an Amended Complaint within the provided time, Defendant may renew this motion, which shall be granted.

**SO ORDERED.**

Dated:  November 9, 2016                    s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on November 9, 2016, using the CM/ECF system, which will send notification to all parties.

                                            s/A. Chubb
                                            Case Manager

15